### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### PADUCAH DIVISION
### Case no. 5:08-cr-00038-TBR

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

BILLI JO SMALLWOOD                                              DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Billi Jo Smallwood's ("Smallwood")

Motion for Compassionate Release. [DN 309.] The government has responded. [DN 316.]

Smallwood has replied. [DN 322.] As such, this matter is ripe for adjudication. After much thought,

for the reasons that follow, Smallwood's Motion for Compassionate Release [DN 309] is

**GRANTED**.

## I.   Background

In November of 2008, Smallwood was indicted on charges of malicious damage and

destruction and attempt to damage and destroy, by means of fire, property owned by the United

States, and as a direct and proximate result of such conduct, causing death. [DN 1.] On June 28,

2012, the jury found Smallwood guilty. [DN 194.] Smallwood was later sentenced to 25 years

imprisonment and 5 years supervised release. [DN 252.] She now moves this Court to grant her

compassionate relief on the basis of her current medical condition and the coronavirus.

## II.   Legal Standard

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) in any case—

    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of
the defendant after the defendant has fully exhausted all administrative rights to
appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "Under the [First Step Act], courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Logan*, 2020 WL 730879, at *1 (W.D. Ky. Feb. 13, 2020).

When determining whether to grant compassionate release, courts must analyze the following factors: (1) whether extraordinary and compelling reasons warrant such a reduction; (2) the applicable policy statements issued by the Sentencing Commission; and (3) the factors set forth in 18 § U.S.C. § 3553(a). *United States v. Marshall*, No. 3:16-cr-00004-JHM, 2020 WL 114437, * 1 (W.D. Ky. Jan 9, 2020) (citing 18 U.S.C. 3582(c)(1)(A)).

First, the Court must determine whether extraordinary and compelling reasons justify a sentence reduction. Congress has not defined what constitutes an "extraordinary and compelling" reason; however, it has charged the Sentencing Commission with "describing what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." *United States v. Webster*, No. 3:91CR138 (DJN), 2020 WL 618828, at *4 (E.D. Va. Feb. 10, 2020) (quoting 29 U.S.C. § 994(t)). The Sentencing Commission commentary provides that extraordinary and compelling reasons may exist due to the defendant's medical condition:

A) Medical Condition of the Defendant.
(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e.,

a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is-
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13.

## III. Discussion

## A.  Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, ––– F.Supp.3d –––, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or

refuses." *United States v. Marhsall,* No. 3:16CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

Smallwood has exhausted her administrative remedies. It is not clear when Smallwood initially filed her request for compassionate release, but she received a denial from the Warden on March 11, 2020. [DN 312, Exhibit B.] Due to lockdowns within the prison, access to materials to properly appeal the Warden's denial are limited. [DN 309 at 2; DN 312, Exhibit B.] However, thirty days have passed since Smallwood first requested compassionate release so her administrative remedies have been exhausted.

## B. Extraordinary and Compelling Reasons

Smallwood argues the current COVID-19 pandemic and her medical conditions are extraordinary and compelling reasons for her release. The government argues Smallwood is not currently suffering from cancer and has no terminal illnesses and the prison has taken measures to limit the risk of contracting COVID-19. The Court finds Smallwood has raised extraordinary and compelling reasons for her release.

In May of 2016, Smallwood complained of burning on her tongue. The dentist on sick call referred Smallwood to the oral surgeon. [DN 312, Exhibit G at 1.] An ultrasound and CT of the head and neck were recommended. [*Id.* at 5.] An ultrasound was performed on July 6, 2016 and found a "possible lymph node in the area of concern" and recommended a CT scan. [*Id.* a 15.] A CT scan was done on July 18, 2016 and reported a "normal study." [*Id.* at 18.] Smallwood was seen by the oral surgeon on October 26, 2016 and he recommended an "immediate incisional biopsy". [*Id.* at 28.] Smallwood was subsequently diagnosed with cancer. In December 2016, Smallwood underwent a resection of two-thirds of her tongue.

4

After the resection, she underwent various chemotherapy treatments, radiation, and reconstructive surgery and therapy. [*See generally id.*] Shortly after her surgery, she had a recurrence of the tumor in 2017. Currently, Smallwood has no teeth, is in a wheelchair, and relies on a feeding tube. The government contends that Smallwood's teeth were removed due to cavities and periodontal disease. On October 28, 2019, Smallwood was seen by Dr. Saxe who wrote, "[Smallwood] came back today complaining of similar complaint including trismus and dental pain and broken teeth. Both upper and lower teeth are painful. She feels that instead of coming back for extractions over and over she would rather have them all taken out today to prevent future surgeries and alleviate her constant pain." [*Id.* at 31.] However, Dr. James Stark, Smallwood's expert, opines that "the treatment that Ms. Smallwood received for her cancer was the proximate cause of her needing to have her teeth removed. Her prior dental condition, including cavities, is trivial compared to the damage inflicted by her cancer treatment." [DN 322-1 at PageID 4673.]

The COVID-19 pandemic has created dangerous conditions specifically in prisons. BOP has taken various steps to minimize the risk of infection. Visits to the prison have been restricted; staff and inmates are given masks; inmates and staff are screened upon entry; and gatherings in public places are limited.[1] Even with these restrictions in place, Carswell FMC, where Smallwood is housed, has had 517 positive cases and at least five people die.[2]

When the Court evaluates Smallwood's current medical condition and the COVID-19 pandemic, Smallwood has extraordinary and compelling reasons for her release.

In *United States v. Muniz,* Defendant pleaded guilty to conspiracy to possess with intent to distribute a controlled substance. 2020 WL 1540325 *1 (S.D. Tex. March 30, 2020). Defendant was initially sentenced to 235 months but was later reduced to 188 months. *Id.* Muniz moved for

---

[1] https://www.bop.gov/coronavirus/covid19_status.jsp
[2] https://www.bop.gov/coronavirus/; https://www.star-telegram.com/news/local/crime/article245037000.html

compassionate release due to his medical condition. *Id.* Muniz was diagnosed with diabetes, hypertension, and end stage renal disease. *Id.* at 2. He also was in a wheelchair due to amputation of his right foot. *Id.* Muniz served approximately eighty percent of his sentence. *Id.* The Court found these were extraordinary and compelling reasons for release. *Id.*

Here, although Smallwood has served only approximately fifty percent of her sentence, she suffers from serious medical conditions that are "permanent disabilities." [DN 322-1 at PageID 4673.] Like Muniz, Smallwood's mobility is hindered due to the "nerve damage she sustained from her chemotherapy". [*Id.*] Dr. Stark has opined that Smallwood's side effect from her cancer treatment—the need for a wheelchair, feeding tube, no teeth, and the difficulty speaking—are all permanent issues.

Smallwood has also complained of issues receiving the appropriate food. In a food journal Smallwood provided, she states during July she received "raw carrots, cucumber, onion, cabbage, whole apples, plums, peaches, meats—turkey, bologna—chips, cookies" and she could not eat any of the above items. [DN 322-2 at PageID 4680.] The month of July, Smallwood documented several days where she was provided improper meals that prevented her from eating. [*See generally* DN 322-2.] Smallwood also noted several people at the prison she spoke with concerning her issues with the food provided. [*Id.*]

Dr. Stark has also noted that Smallwood is at a greater risk to die from the virus due to her weakened immune system. [DN 312, Exhibit A.] The data surrounding COVID-19 is quickly evolving. However, there is research stating cancer survivors are more likely to have complications and be hospitalized if they contract COVID-19.[3] Housing Smallwood in a prison where over 500

---

[3] https://moffitt.org/endeavor/archive/are-cancer-survivors-at-high-risk-for-covid19/

cases have been reported presents a grave risk to her health. Therefore, she has presented other extraordinary and compelling reasons for release.

**C.  § 3553(a) Sentencing Factors**

Finally, the Court must weigh the sentencing factors in § 3553(a) to determine whether Defendant's sentence should be reduced. *Willis*, 382 F.Supp.3d at 1188. Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C § 3553(a).

Here, the Court recognizes the seriousness of Smallwood's offense. She was convicted of setting her home on fire which resulted in the death of two children—even though that was not her intent. Prior to this conviction, she had no criminal history, history of violence or abusive behavior.

The Court does not take lightly Smallwood's conviction. The Court recognizes that Smallwood has also already received some leniency in her sentence. However, the Court does not find that releasing Smallwood would diminish the seriousness of her crime. Smallwood has been imprisoned for nearly 12 years. This is no short sentence.

In *United States v. McGraw,* "McGraw was sentenced to life imprisonment after a jury found him guilty of conspiracy to possess with intent to distribute methamphetamine." 2019 WL 2059488 *1 (S.D. Ind. May 9, 2019). He filed a motion for compassionate release based on the following conditions:

> Mr. McGraw is 72 years old. [See Filing No. 73-1 at 1.] He currently requires a wheelchair, although he can walk for short distances. [Filing No. 80-1 at 3.] Mr. McGraw also requires a portable oxygen machine. [Filing No. 80-1 at 3.] He suffers from a number of conditions, including: "Type II Diabetes, insulin-dependent, with peripheral neuropathy; hyperlipidemia; emphysema; chronic kidney disease stage III; Hepatitis C type 1A (treatment completed and no sign of disease noted); and[ ] chronic pain." [Filing No. 80-1 at 3.] Many of these conditions, such as his diabetes and hypertension are fairly well managed or controlled through the medical treatment Mr. McGraw receives while incarcerated. [Filing No. 80-1 at 3-4.]

*Id.* at 2. The Court found McGraw satisfied the § 3553 factors. The Court stated:

> Ultimately, the Court agrees with the Government that Mr. McGraw's conduct in this case and in the past was very serious. But Mr. McGraw has been in custody since September 2002—nearly 17 years. That is a significant sanction. And the Court will impose lifetime supervision following release, which will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. McGraw's conduct. But further incarceration is not needed to deter Mr. McGraw from further offenses; nor, for the reasons described above, is it necessary to protect the public from future crimes.

*Id.* at 5.

Here, the Court finds the public is not in danger with the release of Smallwood due to her weakened state. She is not likely to commit any further crimes or harm against the public in her state. In *McGraw,* the Court also stated, "Mr. McGraw has served much of his sentence while seriously ill and in physical discomfort. This means that his sentence has been significantly more

laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment". *Id.* The Court finds the same to be true for Smallwood. Imprisonment in her condition is greater punishment than necessary. The significant food restrictions, mobility issues, and difficulty speaking are all conditions that have made her imprisonment more laborious than others.

Addressing Motions for Compassionate Release is a difficult process. In some ways, the Court is asked to predict the future. Ms. Smallwood has significant permanent health conditions that arose after her incarceration. In addition, the prison and Ms. Smallwood face the uncertainty of the impact of COVID-19. However, we do know that the prison has attempted to address the virus. Despite these efforts, five people have died and over 500 inmates have tested positive.

Ms. Smallwood has served approximately fifty percent of her sentence. The crime of conviction is serious. The Court is called upon to balance the severity of the crime of conviction and of the severity of the health of the defendant. This is a difficult task.

If Ms. Smallwood were to catch the virus, the Court believes the consequences could be significant. Undoubtedly Ms. Smallwood is in poor health and not doing well. It is clear to the Court that the likelihood is her medical condition will most likely become worse as opposed to better. She is very vulnerable.

Compassion guides this Judge to grant Ms. Smallwood's motion. The Court finds that the § 3553 factors support compassionate release.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Smallwood's Motion for Compassionate Release [DN 309] is **GRANTED**. The Court directs that the Probation Office in

the Western District of Kentucky contact the Probation Office in the Middle District of Georgia to verify any proposed release plan for Ms. Smallwood and respond to the Court.

**IT IS SO ORDERED.**

Thomas B. Russell, Senior Judge
United States District Court

September 10, 2020

cc: counsel